IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STACY W. FISCHER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | |
| Commissioner of Social Security | : | NO. 13-4194 |

## REPORT AND RECOMMENDATION

M. FAITH ANGELL                                                       July 20, 2015
UNITED STATES MAGISTRATE JUDGE

## I. INTRODUCTION.

Plaintiff Stacy W. Fischer brings this action pursuant to 42 U.S.C. §405(g) and 1383(c)(3) seeking judicial review of an adverse decision of the Commissioner of the Social Security Administration denying his claim for disability insurance benefits ["DIB"] and supplemental security income ["SSI"] under Titles II and XVI of the Social Security Act.  Presently before this court are the parties' pleadings, including Plaintiff's Request for Review [Document 17], and the Defendant's response [Document 18].  On October 8, 2014, Counsel presented oral argument.  For the reasons which follow, I recommend that the relief sought by Plaintiff be denied and judgment be entered in favor of Defendant, affirming the decision of the Commissioner.

## II. BACKGROUND AND PROCEDURAL HISTORY.

Mr. Fischer was born on April 27, 1968.  He completed high school and a one year certification program for "auto tech," and is able to communicate in English. *See Administrative Record* [Document 8], at 35, 158, 160.[1]  The Claimant has past relevant work as building maintenance worker, a cabinet worker,

---

1       Citations to the record refer to the page numbers printed in the lower right hand corner of the page.

and a plant operator (these positions ranging from semi-skilled to skilled and performed at the medium

exertional level).  *Record,* at 20, 54-55.

The decision of which Plaintiff seeks review is the March 6, 2012 decision of ALJ Paula Garrety.

The procedural events leading to this decision were described by the ALJ as follows:

> On January 4, 2010, the claimant protectively filed an application for a period of disability
> and disability insurance benefits.  The claimant also protectively filed an application for
> supplemental security income on January 4, 2010.  In both applications, the claimant
> alleged disability beginning on April 1, 2007.  These claims were denied initially on June
> 21, 2010.  Thereafter, the claimant filed a written request for hearing on August 17, 2010
> (20 CFR §404.929 *et seq*. and 20 CFR §416.1429 *et seq.*).  The claimant appeared and
> testified at a hearing held on December 14, 2011, in Bethlehem, PA.  Richard J. Baine, an
> impartial vocational expert, also appeared and testified at the hearing.  Matthew T.
> Tranter, an attorney, represents the claimant in this matter.  Following the hearing,
> additional evidence was received and admitted [citations to exhibit numbers omitted].

*Record,* at 13.

In her Opinion, ALJ Garrety determined that Plaintiff was not under a disability within the

meaning of the Social Security Act from April 1, 2007, through the date of her decision.  *Id.*

The ALJ found that Plaintiff has the following severe impairments: degenerative joint disease of

the right ankle, status post ankle fracture, low back impairment, status post multiple surgeries of the right

knee and degenerative joint disease of the right knee.  The ALJ further determined that Plaintiff's

medically determinable impairments of hepatitis C, alcohol abuse and depression, singly and/or in

combination, were non-severe.  *Id.,* at 15-16.

Considering all of the evidence, the ALJ determined that Plaintiff had the residual functional

capacity to perform a limited range of light work as defined in 20 CFR 404.1567(a) and 416.967(a), and

that jobs exist in significant numbers in the national and local economies that Plaintiff can perform

including the following representative occupations: an assembler, an inspector, and a packer.  *Record,* at

18, 20-21.

Plaintiff filed a timely Request for Review with the Appeals Council.  On May 17, 2013, the

denied Plaintiff's Request for Review, adopting the ALJ's decision as the final decision of the

Commissioner.  *Record,* at 1-3.

On July 18, 2013, Plaintiff filed an action in this Court requesting review of the adverse decision.

Respondent answered the complaint, Plaintiff filed a brief and statement of issues in support of request for

review, and Respondent filed a response in opposition.  The matter was referred to me by the Honorable L.

Felipe Restrepo for Report and Recommendation.  I held oral argument on October 8, 2014.

### III. SOCIAL SECURITY DISABILITY LAW.

#### A.  Disability Determinations.

The Social Security Act authorizes several classes of disability benefits, including DIB and SSI

benefits.  In order to qualify for benefits, a person must be "disabled" under the Social Security Act and the

accompanying regulations.

To establish a disability under the Social Security Act, a claimant must demonstrate that there is

some "medically determinable basis for an impairment that prevents him from engaging in any `substantial

gainful activity' for a statutory twelve-month period."  *Fargnoli v. Massanari,* 247 F.3d 34, 38-39 (3d Cir.

2001)(quoting, *Plummer v. Apfel,* 186 F.3d 422, 427 (3d Cir.1999)); 42 U.S.C. §423(d)(1)(1982).  A

claimant can establish a disability in either of two ways: (1) by producing medical evidence that one is

disabled *per se* as a result of meeting or equaling certain listed impairments set forth in 20 C.F.R. Pt. 404,

Subpt. P, App. 1 (2000), or (2) by demonstrating an impairment of such severity as to be unable to engage

in any kind of substantial gainful work which exists in the national economy.  *Heckler v. Campbell,* 461

U.S. 458, 460 (1983); 42 U.S.C. §423(d)(2)(A).

The Commissioner's regulations provide a five (5) step sequential evaluation process for

determining whether or not a claimant is under a disability.  20 C.F.R. §404.1520.  The steps are followed

in order.  If it is determined that the claimant is not disabled at a step in the evaluation process, the ALJ will not continue on to the next step.

At Step 1, the Commissioner must determine whether the claimant is engaging in substantial gainful activity.  An individual who is working will not be found to be disabled regardless of medical findings.  20 C.F.R. §404.1520(b).  Step 2 involves evaluating severe impairments.  20 C.F.R. §404.1520(c).  Step 3 requires determining whether the claimant has an impairment or combination of impairments which meets or equals a listed impairment in Appendix 1.  20 C.F.R. §404.1520(d).  Step 4 states that if an individual is capable of performing past relevant work, he will not be found to be disabled. 20 C.F.R. §404.1520(e).  Step 5 requires that if an individual cannot perform past relevant work, additional factors must be considered to determine if other work in the national economy can be performed. 20 C.F.R. §404.1520(f).  *See e.g.*, *Ramirez v. Barnhart*, 372 F.3d 546, 550-51 (3d Cir. 2004).

It is the ALJ's responsibility to resolve conflicts in the evidence, and to determine credibility and the relative weights to be given to the evidence.  *Plummer v. Apfel*, 186 F.3d at 429 (3d Cir. 1999); *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993).  The ALJ's conclusions must be accepted unless they are without basis in the record.  *Torres v. Harris*, 494 F. Supp. 297, 301 (E.D. Pa. 1980), *aff'd*, 659 F.2d 1071 (3d Cir. 1981).

**B.  Judicial Review Of Disability Decisions**.

The role of this court on judicial review is to determine whether there is substantial evidence to support the Commissioner's decision.  *Fargnoli*, 247 F.3d at 38 (3d Cir. 2001); *Knepp v. Apfel*, 204 F.3d 78, 84 (3d Cir. 2000).  Substantial evidence is defined as the relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000).  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance of the evidence.  *Id.*

It is not the role of the Court to re-weigh the evidence of record or substitute its own conclusions for that of the ALJ.  *See e.g., Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002).  Upon appeal to this Court, the Commissioner's factual determinations if supported by substantial evidence shall be conclusive.  This conclusiveness applies both to findings of fact and to inferences reasonably drawn from the evidence.  *See Fargnoli*, 247 F.3d at 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.").

An ALJ's decision must provide sufficient explanation for his/her reasons for discounting all of the pertinent evidence before the ALJ.  However, the ALJ is not required to discuss evidence that is neither pertinent, relevant nor probative.  *Johnson v. Comm'r of Soc. Sec.,* 529 F.3d 198, 203-04 (3d Cir. 2008).

**IV. THE ALJ'S DECISION.**

The ALJ received medical evidence and heard testimony from Plaintiff and a vocational expert.  Proceeding through the five-step evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of April 1, 2007, and thus satisfied the requirements of Step 1 of the sequential evaluation.  *Record,* at 15.

At Step 2, the ALJ found that: "The claimant has the following severe impairments: Degenerative joint disease of the right ankle, status post ankle fracture, low back impairment, status post multiple surgeries of the right knee and degenerative joint disease of the right knee (20 CFR 404.1520(c) and 416.920(c))."  *Id.*

At Step 3, the ALJ concluded that Plaintiff's impairments, considered singly and in combination, do not meet or medically equal any of the Listings, specifically the Listings in section 1.00 (musculoskeletal system), 1.02A (major dysfunction of a joint(s) (due to any cause)), 1.04 (disorders of the spine, and 12.00C (mental disorders: assessment of severity).  *Id.,* at 15-18.

The ALJ reviewed the entire record and determined that Plaintiff has the Residual Functional Capacity:

> to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). However, claimant is limited to simple and routine work tasks and is unable to engage in prolonged standing or walking.  His work activities are limited to no more than occasional bending, stooping, with no climbing, crouching, crawling and/or kneeling.  The work should no involve exposure to heights and or to extremes of temperature, wetness and/or humidity.

*Record,* at 18.

At Step 4, the ALJ found that Plaintiff was unable to perform any past relevant work which was performed at medium levels of exertion and ranging from semiskilled to skilled in nature.  *Id*., at 20.

At Step 5, the ALJ found, considering Plaintiff's age, education, work experience, and residual functional capacity, "there are jobs that exist in significant numbers in the national economy the claimant can perform.  (20 CFR 404.1569, 404.1569(a), 416.969, 416.969(a))."  Representative occupations include an inspector/examiner, an assembler, and a packer.  *Id*., at 20-21.

## V.  DISCUSSION

Plaintiff argues that "substantial evidence exists in the administrative record to support a finding of disability," and cites to the following alleged errors: (1) the ALJ's decision is in contravention of the medical evidence and testimony and must be reversed; (2) the ALJ erred in finding that Mr. Fischer's depression was not a severe impairment at Step Two; (3) the ALJ failed to properly address Mr. Fischer's physical limitations; and (4) the ALJ failed to give proper weight to the opinions of the treating and examining physicians in determining whether Mr. Fischer was disabled.  *Plaintiff's Request for Review* [Document 17], at 10-19.

The Commissioner contends that the ALJ's decision should be affirmed because it is supported by substantial evidence, and responds to each of Plaintiff's allegations of error. *Commissioner's Response* [Document 18], at 4-18.

### A. Substantial Evidence Supports The ALJ's RFC Assessment And Finding That Plaintiff Is Not Disabled.

In his first argument, Plaintiff claims that the ALJ's decision is founded on numerous errors and "is lacking articulation at steps two through five of the sequential evaluation process." *Plaintiff's Request for Review*, at 10. Specifically, Plaintiff asserts that the decision is flawed because: "several of the ALJ's conclusions are reached without reference to supporting evidence or analysis," "the ALJ's decision is in contravention of the vocational expert's testimony, which suggested that Mr. Fischer is unemployable," and "the ALJ's RFC findings are wholly arbitrary and lack any legitimate medical basis." *Id.*, at 11-12.

As a threshold matter, I reject Plaintiff's contention that the vocational expert's findings "were contrary to that of the ALJ to the extent that the vocational expert stated that upon reviewing the records and testimony that was provided by Mr. Fischer as well as a friend of his who appeared at the hearing, he would be considered unemployable, and that was in the report of the vocational expert. This was not addressed by the ALJ in the decision." *Oral Argument,* N.T. 10/8/14 [Document 22], at 18-19. It is the ALJ's responsibility to make credibility determinations and this Court defers to those assessments. *See Zirnsak v. Colvin,* 777 F.3d 607, 612 (3d Cir. 2014). In posing a hypothetical question to a VE, the ALJ is "only required to submit **credibly** established limitations. [emphasis in original]" *Id.,* at 615. ALJ Garrety assessed the credibility of Plaintiff and his witness, determining that Plaintiff's subjective complaints and stated limitations "far exceed[ed] what the relevant evidence of record could reasonably be expected to produce." The ALJ properly identified and explained why she found this testimony not credible, citing a Functional Report completed by Plaintiff on February 26, 2010 (ten days after his last surgical procedure on his right knee) in which Plaintiff reported being able to care for his own needs, to prepare his own

meals, and to use public transportation.  The ALJ also cited a September 19, 2009 Medical Release

Summary completed by the Pennsylvania Department of Corrections.  *Record,* at 19.  This form was

prepared for the stated purpose of "assist[ing] with [Plaintiff's] placement and continuity of care within the

community following incarceration" and signed by Plaintiff.  Plaintiff's chronic conditions were identified

as hepatitis C, plates and screws in his lower right leg, history of back surgery and right knee problems,

Plaintiff was assessed as having no physical restrictions, and it was noted that he was on no medications.

*Id*., at 297.  The ALJ found that there was no evidence in the record, contemporaneous with September 19,

2009 medical release, to contradict it.  *Id.,* at 19.[2]  Finally, the ALJ cited to opinion evidence, giving

significant weight to the RFC assessment by non-examining consultant Jan Kapcala, dated June 18, 2010.

In his RFC assessment, Dr. Kapcala opined that Plaintiff retained the ability to perform light exertional

work.  Dr. Kapcala noted that Plaintiff had surgery on his right knee and right ankle "which resulted in

significant improvement of his symptoms regarding his knee, but it is too early to make a determination

regarding his right ankle [given that the right ankle surgery occurred approximately six weeks prior to Dr.

Kapcala's RFC assessment]."  *Record,* at 486-492.  Thus, the ALJ fulfilled her responsibility to assess

credibility, explain her reasoning, and include only those limitations which were credibly established by

Plaintiff in the hypothetical posed to the VE.

---

2       A December 16, 2009 "new patient" report completed by the Caring Place Family Health Program
noted that Plaintiff complained of right ankle pain, right leg pain and a lump in his right leg.  He reported
pain in his right foot/knee on going up and down stairs and being unable to bear weight for long periods
without pain.  However, he reported being able to walk 3-4 blocks without pain, denied using any assistive
devices to help him ambulate, and said that he was doing maintenance and looking for work.  *Record,* at
329-334.

Plaintiff contends that the ALJ erred in failing to address key medical evidence related to his mental impairments, including notations of treating physicians of "severe depression and anxiety and numerous treatments for same on multiple occasions." *Plaintiff's Request for Review*, at 12.  The ALJ did address Plaintiff's mental impairments, finding that the record included at least two admissions/detoxifications in early 2008 for alcohol and substance dependency and depression.[3]  The ALJ noted that on March 30, 2010, Plaintiff told his health care provider that he had no psychiatric history, had never seen a psychiatrist and had never been hospitalized for depression.[4]  Turning to more recent treatment notes from Vida Nueva at Caring Place, the ALJ determined that Plaintiff continued to report depression secondary to increased pain, for which medication was prescribed.  Dr. Kristann Heinz, one of Plaintiff's primary care providers, prescribed Celexa 20 mg. beginning in June 2010.[5]  In December 2010, Dr. Heinz increased Plaintiff's Celexa dosage to 40 mg., noting that Plaintiff's anxiety/depression had deteriorated.  Dr. Heinz explained: "Pt states depression and anxiety has worsened.  Stated that he is back in court to try and clear his name of previous allegations.  Holidays are making things more difficult." *Record,* at 553-556.  As of March 8, 2011, Dr. Heinz reported that Plaintiff "denie[d] anxiety and depression. on medication;" and assessed Plaintiff's anxiety/depression as "improved, continue medication." *Id.,* at 550-552.  As the ALJ determined, the record contains no evidence of more than conservative treatment for depression/anxiety – there was no psychiatric hospitalizations or outpatient therapy.[6]

---

3       *See Record,* at 16.  The records cited by the ALJ are found at 402-406.
4       Similarly, on March 12, 2010, Plaintiff "denie[d] mental problems and depression.  Depression in past – right now feeling okay." *Record,* at 330.
5       *See Record,* at 628, 682.
6       Plaintiff argues that the record includes "notes indicating suicidal thoughts at times." *Plaintiff's Request for Review*, at 13.  Plaintiff is incorrect – various treatment notes report that Plaintiff denied

While the ALJ ultimately found that Plaintiff's mental impairments were non-severe, she expressly accommodated these impairments by limiting Plaintiff to simple and routine work tasks in assessing his RFC. *Record,* at 16, 18.

For the reasons stated above, I find that the ALJ's RFC assessment and findings are supported by substantial evidence of record.

### B.   <u>The ALJ Did Not Err In Finding Plaintiff's Depression Is Not Severe At Step Two.</u>

Plaintiff contends that the ALJ improperly failed to identify his depression disorder as "severe," and "this error inevitably infects the analysis at all of the subsequent steps." *Plaintiff's Request for Review,* at 12-13.  According to Plaintiff, while the ALJ discussed the four functional areas required in the Step Two analysis for mental disorders:

> there is little to no discussion documenting the application of the ALJ's own specific findings as to the degree of limitations detailed in the medical records.  Without identifying what evidence contradicted the Plaintiff's doctors' findings of severe anxiety and maladjustment issue, the ALJ simply stated that Mr. Fischer has "mild" limitations and never requested a physician to complete a mental residual functional capacity assessment.

*Id.*, at 13-14.

In support of this argument, Plaintiff cites to a December 2007 document in which he contends that his treating physician "opined that Mr. Fischer had 'severe anxiety with psychosocial maladjustments' and 'bi-polar disorder.'" *Id.*  The document Plaintiff cites is a December 21, 2007 Office Progress Note of

---

suicidal thoughts/ideations. *See e.g, Record,* at 403 ("Denies any prior suicidality"); and 692 ("he denies any suicidal thoughts or ideations.")  At a January 31, 2012 office visit at Vida Nueva at Caring Place, it was noted that Plaintiff reported being "done with operations and very stressed out, just wants his pain meds now and not to bother with other modalities.  He is feeling fed up with doctors, and depressed, hopeless and isolated.  [H]e confesses that he sometimes thinks things would be better if he were not alive, since 'my life is just lying around with pain these days.'" However, his medical history was negative for suicidal ideation. *Record,* at 655.

Dr. Miles, one of Plaintiff's primary care physicians.  In this document, Dr. Miles notes that Plaintiff was scheduled to see him for an emergency work-in visit for complaints of "serious issues with stress."  Dr. Miles states that he has known Plaintiff for "many years," and that he had not been seen since June 28, 2006.  Dr. Miles described Plaintiff's "very, very significant psychosocial history," and it was his impression that Plaintiff had "severe anxiety with psychosocial maladjustments [and] highly suspect bipolar disorder.  In fact, no question."  However, Dr. Miles assessed Plaintiff as "now desperate but he is not homicidal or suicidal."  *Record,* at 286, 291.[7]

A subsequent progress note by Dr. Miles (dated January 8, 2008) states that Plaintiff "feels okay. Sleeping better."  *Record,* at 285.  In a May 20, 2008 Department of Corrections Initial Mental Health Questionnaire, Plaintiff denied ever having mental health treatment or taking any mental health medications.  He consistently denied any psychiatric history while incarcerated.  *Id.,* at 300, 317, 319, 320. As noted above, after he was released from prison, Plaintiff denied any psychiatric history and reported that he had never been seen by a psychiatrist or been hospitalized for depression.  In addition, he was consistently described as alert and cooperative, with normal mood and affect and normal attention span and concentration.  *See e.g. id.,* at 427-430, 433-435, 596, 642.

On August 2, 2011, Dr. Heinz opined that Plaintiff continued to be depressed and complained of anxiety, depression, easily tearful and insomnia "mostly related to chronic condition of pain, improved with medication."  Dr. Heinz directed Plaintiff to continue on Celexa and "discussed other ways to control anxiety [and] deep breathing and meditation, referred to library and internet for guided meditations that pt can do at home, may be good WHEE candidate."  *Record,* at 651-653.  When Plaintiff was seen on March

---

7       Dr. Mile's office notes are separated in the Record, with the first page found at 291 and the second at 286.

26, 2012 for pre-op clearance for a right ankle fusion, Dr. Inacio noted that Plaintiff was complaining of

joint pain and was depressed.  It was Dr. Inacio wrote the following impression and recommendation:

> Pt. has been depressed for the past years.  He has been on and off of antidepressants.  He
> tried different methods to help with his depression such as pets and writing on journals
> and it has not helped.  He would like to focus on this problem after his surgery.  He denies
> any suicidal thoughts or ideations.

*Id.,* at 689-693.  Dr. Inacio determined that Plaintiff was stable for surgery and instructed him to return in

two months for follow-up.  *Id.,* at 692-693.

ALJ Garrety properly considered the four functional areas set forth in the disability regulations for

evaluating mental disorders in assessing Plaintiff's mental impairments.  *Record,* at 16.  She concluded

that Plaintiff had no problems with activities of daily living, citing to the functional report completed by

Plaintiff on February 26, 2010, in which he stated that he had no problems handling his personal care.[8]

Turning to social functioning, the ALJ determined that Plaintiff has no more than a mild limitation

in this area, noting that Plaintiff has a girlfriend whom he sees daily and a twelve year old daughter who is

with Plaintiff on the weekends.[9]

---

8        As noted earlier, this document is found in the Record, at 174-181.  In addition to checking "no
problems" when asked about his ability to dress, bathe, feed, shave and take care of his personal needs,
Plaintiff stated that he can prepare his own meals daily with no change since his condition began, and uses
public transportation, going outside on a regular basis to see doctors and go to physical therapy.  He wrote
"do not apply" in response to questions about household chores, shopping, and hobbies and interests,
explaining "I'm in a CCC Center we have no yard."  Physical therapy treatment notes from March 4, 2010
indicate that "Patient working out at a gym, but restricted in lower extremities – may do core
strengthening."  *Record,* at 512.  At a April 27, 2010 office visit, it was reported that Plaintiff was
exercising 5 times a week, using weights and a bike.  *Id.,* at 433.  On August 2, 2011, it was noted that
while Plaintiff continued to be depressed secondary to increased pain, he "enjoys girlfriend, gardening
[and] spending time with his daughter."  *Id.,* at 650.
9        *See Record,* at 49 (where Plaintiff testified that his daughter is with him every other weekend), 58
(where Plaintiff's fiancée testified that she is with him every day); and 178 (function report in which

The ALJ determined that in the area of concentration, persistence and pace, Plaintiff's pain symptoms cause mild limitation. Giving Plaintiff every benefit of the doubt, the ALJ included this limitation in Plaintiff's RFC by determining that he is limited to simple and routine work tasks. This is consistent with Plaintiff's testimony at the December 14, 2011 hearing in which Plaintiff stated that his concentration and attention to task vary with the level of his pain and sometimes causes difficulty in his focus. *Record,* at 46-47.

In the final area, episodes of decompensation, the ALJ determined that Plaintiff has not experienced any episodes of decompensation which have been of an extended period.

Plaintiff asserts that "the ALJ failed to perform the sequential evaluation of the mental impairments, did not address treatment for depression, the medications that Mr. Fischer was taking for medication and anxiety, the suicide attempts and otherwise failed to address, at step two, to discuss how they arrived at the decision that he was not mentally impaired." *Oral Argument,* N.T. 10/8/14, at 5-6. This is incorrect. The ALJ did find that Plaintiff has a mental impairment which is non-severe. The ALJ also properly considered the functional limitations caused by Plaintiff's mental impairment and concluded that it limits him to no more than simple and routine work tasks. The ALJ appropriately discussed evidence of record which, as she determined, indicates limited treatment for depression and anxiety. None of Plaintiff's health care providers documented any functional limitations resulting from Plaintiff's depression or anxiety. The ALJ's findings related to Plaintiff's mental impairments are supported by substantial evidence and should be affirmed.

---

Plaintiff wrote that he sees his daughter one a week).

**C.  The ALJ Properly Accounted For Plaintiff's Physical Functional Limitations In Assessing His RFC.**

Plaintiff argues that the ALJ gave no weight or consideration to his severe difficulty walking and his need to use a cane in order to walk.  According to Plaintiff, the ALJ erred in mentioning Plaintiff's use of a cane, refusing to accept the testimony of Plaintiff and his fiancée, and failing to discuss medical records, including that of the state agency physician, who noted Plaintiff's walking difficulties.  *Plaintiff's Request for Review*, at 14.

The ALJ considered Plaintiff's difficulties in walking in the RFC by restricting him to a limited range of light work with no prolonged standing and walking and no climbing, crouching, crawling or kneeling.  The ALJ acknowledged Plaintiff's testimony in which he asserted that he uses his cane daily but found, based on the evidence of record, that his "subjective complaints and self described limitations far exceed what the relevant evidence of record could reasonably be expected to produce."  *Record,* at 18-19.

The evidence of record indicates that after his right knee surgery in February 2010 and after his ankle surgery in May 2010, part of Plaintiff's recovery plans included use of crutches.  *See Record,* at 383 (February 16, 201 post-op orders include: "WBAT [weight bearing activity as tolerated] with crutches.") and 482 (May 7, 2010 Operative Report which states: "He was given a CAM walker boot and instructed to be non-weight-bearing with crutches.").  Following physical therapy, Plaintiff was released for unrestricted activity after both his right knee surgery and his right ankle surgery.  *Id.,* at 468 (Six week reevaluation of Plaintiff's right knee which includes notation that Plaintiff was "getting significant relief" from treatment and was being discharged from physical therapy to remain on unrestricted activity) and 610 (Status post right ankle surgery note dated June 17, 2010 in which it is reported that Plaintiff "states his is doing well. He has no pain or discomfort at this time.  He has no new complaints" and directing Plaintiff to "do activities as tolerated.").  Although there are notations in the record of Plaintiff using a cane at times, none of Plaintiff's treating sources required this and Plaintiff was consistently directed to continue unrestricted

activities as tolerated. *See e.g. Record,* at 471 (releasing Plaintiff return to unrestricted activities as of May 8, 2010), 617 (December 1, 2011 treatment note indicating that Plaintiff was using a cane and permitting activity level "as tolerated"), 621 (a June 30, 2011 treatment note indicating that Plaintiff was ambulating with a cane and that his gait was antalgic but stable), 624, 626 (treatment notes, dated May 19, 2011 and April 21, 2011, indicating that Plaintiff was **not** using a cane and permitting activity level "as tolerated"), 652 (August 2, 2011 treatment note indicating that Plaintiff was using a cane to ambulate however, he reported that he did not feel unsteady on his feet and had not fallen in the past year),  and 656 (January 31, 2012 office note which states that Plaintiff was being seen for a check-up and to complete paperwork "so he can get full time disability," and reports that Plaintiff was walking with a cane and depressed but "in no acute distress").

Plaintiff cites to Dr. Kapcala's report as finding that his "allegations of severe limitations [are] consistent with the medical records and credible," and argues that the ALJ erred in failing to address this finding. *Plaintiff's Request for Review*, at 14-15.  The relevant statement by Dr. Kapcala reads as follows:

> The claimant has described daily activities that are significantly limited.  This is consistent with the other evidence in this case.  He did undergo surgery for his S/p Arthoscopy Right Knee and S/p Hardware Removal Right Ankle, which has resulted in significant improvement of his symptoms regarding his knee, but it is too early to make a determination regarding his right ankle.  Furthermore, he attends physical therapy.  He claims to require an assistive device to ambulate.  The field office personnel observed him to have difficulty in walking while at the field office.
> Of critical importance in determining the credibility of the claimant's statements regarding symptoms and their effects on his functioning were his medical history, his ADL's, type of treatment he received and his response to the treatment he received.  Based on the evidence of record, the claimant's statements are found to be partially credible.

*Record,* at 491-492.  Dr. Kapcala did not opine that Plaintiff required a cane or other assistive device to

ambulate.[10]  As discussed earlier, the ALJ gave Dr. Kapcala's June 18, 2010 RFC assessment "significant weight," and incorporated the restrictions he found – light work with no prolonged standing or walking, no more than occasional bending/stooping and no climbing, crouching, crawling and/or kneeling – in the ALJ's RFC assessment.

The ALJ properly considered the medical evidence, assessed Plaintiff's credibility and concluded that he "has had significant musculoskeletal impairments and a medical history involving distant back surgery, ankle surgery and multiple knee surgeries."  The ALJ then appropriately accounted for Plaintiff's musculoskeletal impairments in assessing his physical functional limitations.

**D.  The ALJ Properly Weighed The Findings Of Plaintiff's Treating Sources.**

Plaintiff argues that the ALJ erred in rejecting the opinion of Dr. Kristann Heinz who "clearly stated that Mr. Fischer could not work" and in failing to discuss treatment records of Dr. Dung Hyuk Ko. *Plaintiff's Request for Review*, at 16-19.

Contrary to Plaintiff's assertion, the ALJ did consider Dr. Ko's treatment notes.  The ALJ specifically referenced Exhibit B-20F and accurately summarized Dr. Ko's treatment as follows:

> Most recently, an MRI of the lumbar spine, performed on February 9, 2011, showed degenerative disc and disc protrusion in mid lower lumbar spine; no definite impingement to the existing nerve root at L5-S1 was seen.  Claimant's treatment involved series of lumbar epidural steroid injections and at least one facet joint injection (Exhibit B-20F). However, following little improvement, the claimant was placed on narcotics for pain control and aqua therapy was prescribed.  As of January 31, 2012, the claimant was noted to be taking Oxycodone 10 mg. three to four times a day (Exhibit B-23F).

*Record,* at 17.[11]

_____

10      The field office observation discussed by Dr. Kapcala occurred on January 12, 2010, prior to Plaintiff's right knee and ankle surgeries.  At that time, it was noted that Plaintiff "walked with severe limp." *Record,* at 142.

11      Dr. Ko's treatment notes are found in the Record, at 615-632.  The February 9, 2011 MRI of

The ALJ considered and rejected Dr. Kristann Heinz' August 2, 2011 physician's statement in which she "indicated that the claimant's most recent treatment occurred on that date and that the claimant has been continuously disabled through February 2012 and may not return to work."  The ALJ determined that this opinion was not supported by Dr. Heinz' own treatment notes nor the other evidence of record. *Id.,* at 19.

The August 2, 2011 Statement of Dr. Heinz is on a "Physician's Information Request" form of the Domestic Relations Section of the Court of Common Pleas for Northampton County, Pennsylvania.  On this form, Dr. Heinz wrote that Plaintiff has been continuously disabled from [blank] to February 2012 due to back pain, shoulder pain, depression, chronic pain syndrome, glucose intolerance and Hep C.  *Record,* at 647.  In her treatment notes on that same date that Dr. Heinz reported that Plaintiff continued to be depressed secondary to increased pain, noted that Plaintiff enjoyed his girlfriend, gardening and spending time with his daughter, and noted that Plaintiff was walking with a cane but did not feel unsteady and had not fallen in the past year.  *Id.,* at 650-652.  In a later office note, dated January 31, 2012, Dr. Heinz noted that Plaintiff needed paperwork filled out for his insurance so he could get full time disability, which was in process, and that he also needed something filled out to defer child support payments until disability came through.  Dr. Heinz stated: "Forms filled out during visit as stop-gap until SSI kicks in, filled through June for temporary disability."  *Record,* at 655-656.  The only functional limitations ever placed by Dr. Heinz on Plaintiff were to use an elevator and to limit his stair climbing, which was accounted for in the ALJ's RFC which limited Plaintiff to no climbing.  *Id.,* at 334-335 and 363.

---

Plaintiff's lumbar spine was ordered by Dr. Ko, who treated Plaintiff from January 27, 2011 through December 1, 2011.  *Record,* at 631-632.

The ALJ appropriately discounted Dr. Heinz' conclusory statement because it is not supported by the record evidence.


## RECOMMENDATION

For the reasons stated in the discussion above, it is recommended that the relief sought in Plaintiff's Request for Review be DENIED, and that judgment be entered in favor of Defendant, affirming the decision of the Commissioner of Social Security.  Plaintiff may file objections to this Report and Recommendation within fourteen days after receiving a copy of it.  *See* Fed.R.Civ.P. 72.  Failure to file timely objections may constitute a waiver of any appellate rights.  *See Leyva v. Williams,* 504 F.3d 357, 364 (3d Cir. 2007).


S/M. FAITH ANGELL _____
M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE

By Email:
Hon. L. Felipe Restrepo
Matthew T. Tranter, Esq.          mtranter@maloneylawoffice.com
Dina W. Griffin, Esq.             dina.griffin@ssa.gov
M. Jared Littman, Esq.            jared.littman@ssa.gov
Thomas Moshang, III, Esq.         thomas.moshang@usdoj.gov